Slip Op. 14-80

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **PUERTO RICO TOWING & BARGE CO.,** | |
| Plaintiff, | |
| v. | Before: Jane A. Restani, Judge |
| **UNITED STATES,** | Court No. 11-00438 |
| Defendant. | |

**OPINION**

[Action dismissed for lack of subject matter jurisdiction for failure to file a timely protest with Customs.]

Dated: July 10, 2014

Peter S. Herrick, Peter S. Herrick, P.A., of St. Petersburg, FL, for plaintiff.

Jason M. Kenner, Trial Attorney, Civil Division, U.S. Department of Justice, of New York, NY, for defendant. With him on the brief were Stuart F. Delery, Assistant Attorney General, Jeanne E. Davidson, Director, and Amy M. Rubin, Assistant Director. Of counsel on the brief was Michael W. Heydrich, Office of the Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection, of New York, NY.

Restani, Judge: This matter is before the court on Defendant United States' motion to dismiss for lack of subject matter jurisdiction pursuant to U.S. Court of International Trade Rule 12(b)(1). Because Plaintiff Puerto Rico Towing & Barge Co. ("PR Towing") failed to satisfy the jurisdictional requirement of filing a timely protest with U.S. Customs and Border Protection ("Customs") prior to commencing suit, the court grants the motion.

## BACKGROUND

PR Towing is the owner and operator of tug boats operating under the U.S. flag, including the tug Punta Borinquen ("the tug").  Compl. ¶¶ 1, 3, ECF No. 13 (Jan. 16, 2013).  In 2003, the tug was repaired in the Dominican Republican before being returned to San Juan, Puerto Rico.  Id. ¶¶ 4–5.  Upon the return of the tug to the United States, PR Towing submitted on September 5, 2003, a Record of Vessel Foreign Repair or Equipment Purchase, listing the work performed on the vessel while in the Dominican Republic.  Id. ¶ 6, Ex. A.  PR Towing later submitted an Application for Relief from Foreign Vessel Repair Duties, claiming that under the Carribean Basin Economic Recovery Act the vessel repairs were exempt from the otherwise applicable 50 percent ad valorem duty rate.  See id. ¶ 7, Exs. A–C.  Customs liquidated the entry on September 28, 2007, granting the application in part and denying it in part.  Id. ¶ 8, Ex. C.  Customs denied complete relief because it could not determine based on the invoice submitted by PR Towing what portion of the materials and equipment used in the repairs was a product of the beneficiary country, the Dominican Republic.[1]  See id. at Ex. C.

   PR Towing then sent an email with an attached letter to a vessel repair specialist at the Port of New Orleans on December 12, 2007, questioning the partial rejection of the application for relief.  See id. at Exs. D–E.  The attached letter informed the specialist that PR Towing was preparing to request a new, more detailed invoice from the shipyard to satisfy Customs but "before undertaking this time consuming task," PR Towing requested the specialist

---

[1] Customs asserted that repairs qualified for duty free treatment only if the cost or value of materials produced in one or more beneficiary countries plus direct costs of processing operations performed in the beneficiary country were equal to or greater than 35 percent of the appraised value of the repair work.  See Compl., Ex. C.

consider a headquarters ruling (H006055) that it believed obviated the need for such an invoice. Id. at Ex. D. The specialist replied via email the next day, informing PR Towing that "[e]ach entry and each ruling stands on its own." Id. at Ex. E. The specialist reiterated her previous decision and reasoning before informing PR Towing that its "only option here is to file a protest." Id.

On December 17, 2007, less than 90 days after liquidation, PR Towing sent a second emailed letter, addressed to the same specialist. Id. at Ex. F. Counsel began the letter by explaining that the letter was "in the hopes that we can avoid the necessity of preparing a very exhaustive protest." Id. The letter made the same arguments as the previous letter, relying heavily on the headquarters ruling that PR Towing believed was controlling. Id. The specialist replied the same day and explained that the invoice provided by PR Towing was not as detailed as the one involved in the prior ruling. Email from Glenda Bradley to Peter Herrick (Dec. 17, 2007), Case File, Tab 1. She instructed counsel that "[i]f you believe your argument has merit, then you may base your protest on those grounds only. I will let the attorneys in Headquarters decide." Id.

On January 10, 2008, more than 90 days after liquidation, PR Towing sent a letter to Customs stating that "the importer has 180-days from the date of liquidation to file a protest for the referenced entry pursuant to 19 U.S.C. § 1514(c)(3)." Letter from Peter Herrick to Port Director (Jan. 10, 2008), Case File, Tab 4. The letter further stated that PR Towing "shall be filing a protest before the filing deadline expires" and that "[t]he importer is well within the time limit to file the required protest." Id. PR Towing filed a protest on January 28, 2008, using Customs' standard protest form. CBP Protest No. 2002-08-100071 (Jan. 28, 2008), Case File.

Court No. 11-00438 Page 4

The protest made no reference to the previous emails exchanged with the vessel repair specialist, and it did not claim that a protest had been filed previously. Id. The port denied the protest as untimely the next day. Id.

On February 8, 2008,[2] PR Towing filed a second protest, claiming for the first time that the prior letters had constituted protests under § 1514. CBP Protest No. 2002-08-100080 (Feb. 8, 2008), Case File, Tab 1. On February 27, 2008, PR Towing sent the New Orleans Port Director a letter informing him that PR Towing had filed the second protest and requesting that Customs take no action against the importer. Letter from Peter Herrick to Port Director (Feb. 27, 2008), Case File, Tab 4. On May 18, 2011, Customs denied the second protest as untimely, as it was not filed within 90 days of the contested decision, and the emailed letters from December 2007 did not constitute protests. See Compl., Ex. G. Customs also denied a new claim for reliquidation based on inadvertence brought under then-in-force 19 U.S.C. § 1520(c)(1) (2003). Id.

After its loss before the agency, PR Towing commenced suit by filing a summons on November 9, 2011. Summons, ECF No. 1 (Nov. 9, 2011). In its later-filed complaint, PR Towing alleged three counts: 1) the "letter protest" of December 12, 2007, and the amendment of December 17, 2007, were timely filed within the 90-day protest period; 2) Customs failed to consolidate PR Towing's protest with that of its surety;[3] and 3) Customs improperly denied PR

---

[2] The court notes that it appears the second protest was backdated to December 12, 2007, despite being received on February 8, 2008. See CBP Protest No. 2002-08-100080 (Feb. 8, 2008), Case File, Tab 1.

[3] On February 28, 2008, PR Towing's surety, Hartford Fire Insurance Co., filed a protest for the vessel repair entry (Protest No. 2002-08-100086). Compl. ¶¶ 26–27. It remains
(continued...)

Court No. 11-00438                                                                                                         Page 5

Towing's claim of inadvertence under 19 U.S.C. § 1520(c)(1) (2003).  Compl. ¶¶ 22–31.  The United States moved to dismiss the complaint for lack of subject matter jurisdiction, arguing that because PR Towing failed to file a timely protest, its complaint fails to invoke the court's protest jurisdiction.  See Def.'s Mem. in Supp. of Its Mot. to Dismiss, ECF No. 25 (Oct. 30, 2013) ("Def. Mem.").

## ANALYSIS

I.      **Timeliness of Section 1514 Protest**

The court has jurisdiction over customs matters in "any civil action commenced to contest the denial of a protest, in whole or in part."  28 U.S.C. § 1581(a) (2013).  Jurisdiction is contingent on the filing of a timely protest with Customs followed by the filing of a timely summons in the court challenging denial of the protest.  See id.; 28 U.S.C. § 2636(a); Koike Aronson, Inc. v. United States, 165 F.3d 906, 909 (Fed. Cir. 1999).  "The requirements for a valid protest are contained in section 1514(c)(1) and the implementing regulation . . . [and] are mandatory."  Koike, 165 F.3d at 909.  The statute requires that

> A protest of a decision made under subsection (a) of this section shall be filed in writing, or transmitted electronically pursuant to an electronic data interchange system, in accordance with regulations prescribed by the Secretary.  A protest must set forth distinctly and specifically–
>> (A) each decision described in subsection (a) of this section as to which protest is made;
>> (B) each category of merchandise affected by each decision set forth under paragraph (1);
>> (C) the nature of each objection and the reasons therefor; and
>> (D) any other matter required by the Secretary by regulation.

19 U.S.C. § 1514(c)(1).  As permitted by the statute, Customs has promulgated regulations

---

[3](...continued)
undecided.  Id. ¶ 29.

Court No. 11-00438 Page 6

creating additional requirements for the filing of a protest. "Protests against decisions of a port director shall be filed in quadruplicate on Customs Form 19 or a form of the same size clearly labeled 'Protest' and setting forth the same content in its entirety, in the same order, addressed to the port director." 19 C.F.R. § 174.12(b) (2008). Additionally,

> A protest shall contain the following information:
> (1) The name and address of the protestant, i.e., the importer of record or consignee, and the name and address of his agent or attorney if signed by one of these;
> (2) The importer number of the protestant. If the protestant is represented by an agent having power of attorney, the importer number of the agent shall also be shown;
> (3) The number and date of the entry;
> (4) The date of liquidation of the entry, or the date of a decision not involving a liquidation or reliquidation;
> (5) A specific description of the merchandise affected by the decision as to which protest is made;
> (6) The nature of, and justification for the objection set forth distinctly and specifically with respect to each category, payment, claim, decision, or refusal;
> (7) The date of receipt and protest number of any protest previously filed that is the subject of a pending application for further review pursuant to subpart C of this part and that is alleged to involve the same merchandise and the same issues, if the protesting party requests disposition in accordance with the action taken on such previously filed protest;
> (8) If another party has not filed a timely protest, the surety's protest shall certify that the protest is not being filed collusively to extend another authorized person's time to protest; and
> (9) A declaration, to the best of the protestant's knowledge, as to whether the entry is the subject of drawback, or whether the entry has been referenced on a certificate of delivery or certificate of manufacture and delivery so as to enable a party to make such entry the subject of drawback (see §§ 181.50(b) and 191.81(b) of this chapter).

19 C.F.R. § 174.13(a) (2013).

The courts have construed purported protests generously in the past, noting the harsh consequences of failing to comply with this jurisdictional prerequisite. See, e.g., Koike, 165 F.3d at 908–09; Eaton Mfg. Co. v. United States, 469 F.2d 1098, 1104 (C.C.P.A. 1972); Mattel, Inc. v. United States, 72 Cust. Ct. 257, 261–62, 377 F. Supp. 955, 960 (Cust. Ct. 1974).

Nonetheless, the Court of Appeals for the Federal Circuit also has explained that "protests are not 'akin to notice pleadings [that] merely have to set forth factual allegations without providing any underlying reasoning.'" Koike, 165 F.3d at 909 (alteration in original) (quoting Computime, Inc. v. United States, 772 F.2d 874, 878 (Fed. Cir. 1985)). Protesting on Customs Form 19 has not always been required, but the court has stated that "[u]nder existing and longstanding case law, a separate letter containing the information required in the regulations and clearly labeled as a protest . . . suffice[s] so long as the letter [is] in conformity with the importer's obligations under the statutory scheme and 'sufficient to notify the [duty] collector of [the objection's] true nature and character.'" Ammex, Inc. v. United States, 27 CIT 1677, 1685–86 & n.11, 288 F. Supp. 2d 1375, 1382–83 & n.11 (2003) (fifth and sixth alterations in original) (quoting Davies v. Arthur, 96 U.S. 148, 151 (1877)) (rejecting paragraph on entry papers as protest where it "could solely be viewed as an indication that a protest was about to follow (as opposed to constituting a valid protest in itself)"). The Federal Circuit has refused to hold that a protest is valid simply because a court could surmise, from the surrounding circumstances, that Customs was aware of the substance of the protesting party's claim when the party failed to comply with the relevant statute and regulations. Koike, 165 F.3d at 909. Additionally, many of the earlier cases cited by PR Towing adopting generous views of purported protests predate revisions to the statute clarifying the authority of the agency to establish additional requirements for protests. See, e.g., Mattel, 72 Cust. Ct. at 259, 377 F. Supp. at 958.

    In addition to apprising the agency of the basis and subject of the protest, the purported protest must be sufficiently clear as to its purpose in order to put into motion the administrative process. In this vein, "the sense conveyed by the letter and the circumstances

attending its delivery by the customshouse broker" must demonstrate that "the letter was intended as a protest under section 514." Continental Ore Corp. v. United States, 67 Cust. Ct. 202, 205, 331 F. Supp. 1060, 1063 (1971) ("A customshouse broker experienced in filing protests, who writes a letter which puts the collector in the equivocal position of guessing how he should consider the letter under section 514, must do so at the peril that the collector will not consider the letter as a protest."). Although the standard for judging a purported protest is an objective one, the court has dismissed actions "when it appears that the letter was not intended as a protest." See id. at 1063 (citing Rosa v. United States, 54 Cust. Ct. 322 (1965)); see also Mattel, 72 Cust. Ct. at 266, 377 F. Supp. at 963 ("The test for determining the sufficiency of a protest under section 514 . . . is an objective one and is not dependent upon the district director's subjective reaction thereto.").

Applying these standards, our predecessor court found a letter to constitute a protest where it specified the IRS number, entry numbers, date of entry and liquidation, requested tariff classification, article number, and supporting authority. Mattel, 72 Cust. Ct. at 257–58, 265–66, 377 F. Supp. at 957–58, 962–63 (noting however that "no formal rules have been devised for the manner in which such objections should be expressed" and that defendant conceded the sufficiency of letters written by a non-professional employee of the importer). By contrast, the court rejected a letter indicating that the duties were being paid under protest pending the filing of a formal protest. Continental Ore, 67 Cust. Ct. at 205, 331 F. Supp. at 1063 ("[W]e cannot find or say that the collector should have considered the letter as a protest. The letter was not filed in the usual manner that the customhouse broker filed protests with the deputy collector . . . ."). The court has rejected letter protests in other cases where the letter was not

designated as a protest and did not reference the term protest. Chrysal USA, Inc. v. United States, 853 F. Supp. 2d 1314, 1324, 1330 (CIT 2012). The court in Chrysal arrived at its holding even though Customs allegedly had actual knowledge of the protestant's grievance. See id. at 1328 (citing Koike, 165 F.3d at 909); see also XL Specialty Ins. Co. v. United States, 28 CIT 858, 870, 341 F. Supp. 2d 1251, 1261 (2004) (explaining that the validity and scope of a protest is objective and independent of a Customs official's subjective reaction to it).

      Here, PR Towing's letters failed to comply with several provisions of both the statute and regulations, and therefore PR Towing has failed to invoke properly the jurisdiction of the court. Read together the letters of December 12 and December 17 "distinctly and specifically" mention the entry number, date of Customs' decision letter, and name of the tug. See Compl., Exs. D, F. The letters also identify the general category of merchandise as "repairs" performed on the subject tug in the Dominican Republic. See id. They point to a headquarters ruling (H006055) that PR Towing believed was controlling and argue that the ruling did not require a more detailed invoice than the one submitted in order to obtain duty-free treatment. See id. The only information provided in the second letter not contained in the first is a copy of the ship repair invoice referred to in the cited headquarters ruling. Id. at Ex. F. Noticeably absent from both letters are the name and address of the importer of record (except by reference to the invoice from another customs ruling attached to the second letter, which contains the name only), the date of entry, and a specific description of the various repairs that were made along with support for claiming each as exempt from duty. See id. at Exs. D, F. Accordingly, the letters failed to meet the specific statutory requirements of a valid protest, as well as the regulations expressly authorized by the statute, even reading the letters generously. Although in the context

of prior communications with Customs, the vessel repair specialist appears to have understood the gist of the complaint, it is not at all clear that without this information or labeling the letters as protests, that the official was on notice as to the bases of the specific objections of PR Towing as well as the fact that these were intended as protests within the definition of § 1514.  At all relevant times, PR Towing was represented by experienced customs counsel who demonstrated knowledge of the protest statute and regulations by later filing a sufficiently detailed, albeit untimely, protest with Customs.

Perhaps most importantly, the language of the letters makes it clear that PR Towing never intended them to serve as protests within the meaning of § 1514.  The December 12 letter indicated that PR Towing was planning on obtaining a more detailed invoice to submit to Customs if its legal argument was not accepted, indicating to Customs that the letter was not meant to be the single protest permitted by statute.  See 19 U.S.C. § 1514(c)(1).  Likewise, the letter of December 17 went so far as to say that PR Towing hoped to "avoid the necessity of preparing a very exhaustive protest."  Compl., Ex. F.  Neither document was labeled as a protest, despite such a requirement in 19 C.F.R. § 174.12(b), and the first letter does not even include the term.  In response to the vessel repair specialist's instructions to file a protest on both December 13 and December 17, 2007, PR Towing did not reply with a clarification that its letters were intended to serve as a protest.  Instead, it waited until January 10, 2008, after the 90-day protest period, to send the port director a letter indicating that PR Towing "shall be filing a protest before the deadline expires."  Letter from Peter Herrick to Port Director (Jan. 10, 2008), Case File, Tab 4.  Even when the initial protest was filed after the permitted period, PR Towing failed to raise any argument that its previous letters constituted formal protests of Customs' actions.

Court No. 11-00438 Page 11

See CBP Protest No. 2002-08-100071 (Jan. 28, 2010), Case File. PR Towing's post hoc attempts to reconstrue its emails as protests after its discovery of the statutory deadline[4] cannot save its complaint. By filing letters that were at best ambiguous as to their intent, counsel did "so at the peril that the collector [would] not consider the letter[s] as a protest." Continental Ore, 67 Cust. Ct. at 205, 331 F. Supp. at 1063.

      Because PR Towing failed to meet the statutory and regulatory requirements of filing a protest with Customs and did not distinctly and specifically communicate its intent to protest, PR Towing has failed to satisfy a jurisdictional prerequisite to suit, and the court must dismiss the action.[5]

---

[4] PR Towing's failure to timely protest Customs' liquidation of its entry likely stems from the change in the protest period caused by the Miscellaneous Trade and Technical Corrections Act of 2004, Pub. L. No. 108-429, §§ 2104, 2105, 2108, 118 Stat. 2434, 2598. The law repealed 19 U.S.C. § 1520(c), which permitted a claim for reliquidation within one year based on clerical error, mistake of fact, or inadvertence, requiring these claims instead be brought as protests under § 1514. The law also extended the period for filing protests under § 1514 from 90 to 180 days, but only for entries on or after December 18, 2004. See id. The entry here occurred on September 5, 2003, and therefore the shorter 90-day period applied. Compl. ¶ 6. Nonetheless, PR Towing's letter to Customs on January 10, 2008, incorrectly asserted that the company had 180 days to protest Customs' decision.

[5] Because the court concludes that PR Towing failed to file a timely protest, there is no basis for PR Towing's claim in Count II that its "letter protest" should have been consolidated with the protest of its surety. Therefore, this count also is dismissed.

    Furthermore, even under PR Towing's theory, its present action before the court would be timebarred. Pursuant to 28 U.S.C. § 2636(a), a civil action contesting the denial of a protest must be brought within 180 days of the date of mailing of a notice of denial of a protest. "There is no precise form that a denial of a protest must take." Labay Int'l, Inc. v. United States, 83 Cust. Ct. 152, 156 (1979). Assuming arguendo that either the December 12 or December 17, 2007 letters could amount to a protest, both received definitive, negative responses on the merits on December 13 and December 17, 2007, respectively. See Email from Glenda Bradley to Peter Herrick (Dec. 13, 2007), Case File, Tab 1; Email from Glenda Bradley to Peter Herrick (Dec. 17, 2007), Case File, Tab 1. Therefore, PR Towing would have been required to file a summons

(continued...)

## II.    Claim under 19 U.S.C. § 1520(c)

PR Towing also alleges that Customs' failure to afford its vessel repairs duty-free treatment amounted to inadvertence by failing to properly consider the shipyard invoices submitted with PR Towing's application for relief.  Compl. ¶¶ 30–31.  The government contends that PR Towing failed to protest the denial of this claim raised within the second protest and rejected by Customs, and therefore, the court lacks jurisdiction to consider it.  Def. Mem. 13–14.  The denial of a request for reliquidation under 19 U.S.C. § 1520(c) (2003) was a protestable decision at the time.  See 19 U.S.C. § 1514(a)(7) (2003).  PR Towing fails to address this argument in its opposition to the motion to dismiss, even though, as the plaintiff, PR Towing bears the burden of establishing jurisdiction.  See Norsk Hydro Can., Inc. v. United States, 472 F.3d 1347, 1355 (Fed. Cir. 2006).  Because PR Towing has not submitted any argument as to why its failure to protest[6] the denial of its § 1520(c) claim should not preclude the court from exercising jurisdiction over this claim, the court must dismiss this count of the complaint as well.

---

[5](...continued)
with the court no later than June 16, 2008, years before the summons in this case was actually filed on November 9, 2011.  See Summons.

[6] Although the request for reliquidation pursuant to 19 U.S.C. § 1520(c) was contained in a document labeled as a protest, this cannot constitute a protest within the meaning of 19 U.S.C. § 1514, as the document presented the issue to Customs for the first time and no subsequent protest of that adverse decision was made.  See 19 U.S.C. § 1514(c)(3) (requiring a protest be filed "after but not before" a protestable decision).

Court No. 11-00438                                                                                                   Page 13

## CONCLUSION

      Because PR Towing failed to meet the jurisdictional prerequisite of filing a timely protest with Customs with respect to any of the counts in its complaint, the court must dismiss the case for lack of subject matter jurisdiction. Judgment will enter accordingly.

                                                                                           /s/ Jane A. Restani  
                                                                                            Jane A. Restani  
                                                                                                     Judge

Dated: July 10, 2014  
           New York, New York